# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4402 | **DATE** | 8/28/2000 |
| **CASE TITLE** | United Magazine Company vs. Chas. Levy Circulating Co., L.L.C. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9/11/2000 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Levy's motion for leave to amend (Doc. 55-1) is granted in part and denied in part. Third-Party Defendants' motions for summary judgment (Docs. 42-1, 49-1) are provisionally denied with the understanding that they may be renewed and supplemented. Levy's unopposed motion to change its name (Doc. 54-1) is also granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | s |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | AUG 3 0 200 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | | 8/28/2000 |
| | Copy to judge/magistrate judge. | | date mailed notice |
| ETV | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 AUG 29 PM 12: 11 | ETV mailing deputy initials |
| | | Date/time received in central Clerk's Office | |

Document Number

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
AUG 3 0 2000

UNITED MAGAZINE COMPANY,       )
                Plaintiff,     )
        v.                     )
CHAS. LEVY CIRCULATING CO., L.L.C.  )
                Defendant      )
_____  )
CHAS. LEVY CIRCULATING CO., L.L.C.  )
                Counter-Plaintiff,  )
        v.                     )   No. 99 C 4402
UNITED MAGAZINE COMPANY,       )
ANDERSON NEWS COMPANY, INC. OF )   Judge Rebecca R. Pallmeyer
TENNESSEE, ANDERSON NEWS       )
CORPORATION, GREAT ATLANTIC    )
NEWS L.L.C. and THE NEWS GROUP,  )
INC.,                          )
                Counter-Defendants.  )

## MEMORANDUM OPINION AND ORDER

The field of magazine wholesalers in the magazine distribution industry narrowed

dramatically in recent years after the industry switched from a geographic-based distribution

system to a distribution process dominated by national retail chains in competitive bidding.

This case involves five magazine wholesalers and a dispute surrounding transactions that

would narrow the field further still. Plaintiff United Magazine Company ("UniMag") filed

this common law contract action against Chas. Levy Circulating Company, L.L.C.[1] ("Levy"

---

[1]     Pursuant to a corporate reorganization, Chas. Levy Circulating Co. changed
its name to Chas. Levy Circulation Co., L.L.C. (Levy's Mot. To Change Name of Party ¶
1.) On February 8, 2000 Levy filed a motion pursuant to Fed. R. Civ. P. 15(c)(3) to change
its name reflecting this alteration. No party has opposed this motion. Accordingly, the court
grants Levy's motion to change its name (Doc. 54-1) and orders all pleadings to reflect this
change.

or "Counter-Plaintiff"), alleging, *inter alia*, that Levy breached its agreement to purchase certain of UniMag's assets. Levy filed a Counterclaim and a First Amended Counterclaim alleging that UniMag breached its own obligations under the same asset purchase agreement.[2] Levy also named Great Atlantic News, L.L.C. and the News Group, Inc. (collectively "News Group"), and Anderson News L.L.C. ("Anderson") as Third-Party Defendants for their part in entering subsequent asset purchase agreements with UniMag, allegedly in violation of provisions that gave Levy a right of first refusal on those assets. Anderson and News Group responded to the First Amended Counterclaim by filing motions for summary judgment. Levy now seeks leave to file a Second Amended Counterclaim. Anderson and News Group oppose the motion on grounds that the proposed pleading does not state a claim and would prejudice them. For the reasons set forth below, the court grants in part and denies in part Levy's motion to file a Second Amended Counterclaim.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 1999, UniMag, a citizen of Ohio, filed this action against Levy, then a citizen of Illinois, under diversity jurisdiction. At all relevant times, UniMag and Levy were magazine wholesalers who distributed magazines and display racks to retail businesses. (Compl. ¶ 14.) On March 30, 1999, Levy and UniMag entered into an agreement under which Levy was obligated to purchase certain assets and to negotiate agreements for discounts

---

[2] The court notes that Levy's action is actually a Counterclaim and a Third Party Complaint. As such, Anderson and News Group are actually Third-Party Defendants, rather than Counter-Defendants. The court's opinion will reflect the proper nomenclature.

with suppliers on behalf of UniMag. (*Id.* ¶ 18.) UniMag's Complaint alleged that Levy breached its agreement to purchase UniMag's assets, that Levy breached its fiduciary duty to UniMag, and that Levy tortiously interfered with UniMag's prospective economic advantage by negotiating an exclusive distributor agreement with one of UniMag's suppliers on Levy's own behalf. (Compl., Counts I-III.) On September 22, 1999, Levy filed a Counterclaim and a First Amended Counterclaim against UniMag; Anderson, a Delaware corporation with its principal place of business in Tennessee; Great Atlantic, a Delaware limited liability company with its principal place of business in Georgia; and News Group,[3] a Delaware corporation with its principal place of business in British Columbia, Canada. Anderson and News Group are also magazine wholesalers. As part of its prayer for relief, Levy requested that this court preliminarily enjoin UniMag's transfer of assets to Anderson and News Group.

As a factual matter, Levy alleges that UniMag misrepresented its poor financial situation to induce Levy to enter into the agreement to purchase assets from UniMag, and that UniMag failed to comply with certain covenants under the terms of the agreement. (First Am. Counterclaim ¶¶ 12-16.) After serving notice that UniMag was in default under terms of the agreement, Levy asserts that it exercised its right to terminate the agreement on June 1, 1999. (*Id.* ¶ 17.) Despite terminating the agreement, Levy claims that it retained a surviving "right of first refusal" under the contract, allegedly requiring UniMag to give notice

---

[3]     Although it is incorporated in Delaware, the News Group is a business name under which Great Atlantic News L.L.C. conducts business in the magazine industry. (Great Atlantic's and News Group's Memo. in Opp'n to Def. Levy's Mot. for Leave to Amend, at 1 n.1.)

to Levy before engaging in any sale of its assets for one year from the date Levy terminated the agreement. (*Id.* ¶¶ 18-19.) On September 20, 1999, UniMag announced that it was involved in negotiations to sell off portions of its operations to Anderson and News Group. (*Id.* ¶¶ 22-24.) As a result, Levy claims that UniMag breached its contractual obligation to afford Levy a right of first refusal by entering into asset purchase agreements with Anderson and News Group. (*Id.* ¶ 31.) Levy alleges that Anderson and News Group knew of Levy's first refusal right, but negotiated and executed those agreements over a holiday weekend in September 1999 in order to circumvent this court's ability to enjoin them from violating Levy's rights. (*Id.* ¶ 25.) Lastly, Levy claims that UniMag sent its employees and at least one of its customers a letter referring to Levy as a "crime group," as "vultures," and as "evil," stating further that "Levy['s] level of greed proved to be higher than that of their integrity." (*Id.* ¶ 27.)

Based on these factual assertions, Levy's first amended counterclaim included five counts alleging: (1) that UniMag breached its contract with Levy by failing to disclose accurate financial information and by failing to comply with certain covenants, including Levy's surviving right of first refusal (First Am. Counterclaim, Count I); (2) that UniMag committed fraud by concealing and misrepresenting its financial difficulties (*Id.* Count II); (3) that Anderson and News Group tortiously interfered with Levy's prospective business advantage by knowingly acting in contravention of Levy's right of first refusal (*Id.* Count III); (4) that UniMag engaged in trade disparagement by circulating the letter identifying Levy as "evil" (*Id.* Count IV); and (5) that UniMag also violated the Illinois Uniform Deceptive Trade

4

Practices Act ("UDTPA"), 815 ILCS 510/1 *et seq.*, by circulating that same letter (*Id.* Count V).

On October 7, 1999, the date scheduled for the preliminary injunction hearing, the parties negotiated an agreement prohibiting UniMag from transferring any additional assets without first notifying Levy. (10/7/99 Agreed Order, Doc. No. 31 ¶ 1.) This agreed order did not purport to consider the merits of any factual or legal question or cause of action in the case. (*Id.* ¶ 7.) It is undisputed that on December 9, 1999, the parties held a Rule 26(f) conference, during which Levy represented that it would not amend its counterclaim. On December 23, 1999, Anderson filed its motion for summary judgment on the grounds that it was not aware of Levy's right of first refusal and that it had not engaged in any unfair competition. On January 10, 2000 Anderson filed its answer to Levy's First Amended Counterclaim. On January 10, 2000, News Group filed its motion for summary judgment on grounds similar to those asserted by Anderson. To date, News Group has not filed an answer to the First Amended Counterclaim. After filing the First Amended Counterclaim, Levy reorganized under the laws of Delaware, becoming a Delaware limited liability company effective November 1, 1999. (Levy's Mot. to Change Name of Party ¶ 1.) On February 8, 2000, Levy filed its motion for leave to file a Second Amended Counterclaim.

In support of its motion, Levy asserts that it has become aware of "'occurrences that have taken place since the last [counterclaim] was filed.'" (Mot. For Leave to File Second Amended Counterclaim ¶ 5.) Specifically, Levy alleges that since last September, UniMag, Anderson, and News Group have told customers who previously were serviced by UniMag

and now are serviced by Levy, that Levy is responsible for handling UniMag returns, when in fact this responsibility remains with UniMag. (Second Am. Counterclaim ¶ 32.) Levy alleges that these false assertions were made in order to damage Levy's reputation and to induce customers to switch their service from Levy to Anderson and News Group. (*Id.* ¶ 33.) Levy further alleges that with the intention of benefitting Anderson and News Group, UniMag has threatened its former customers who have chosen to do business with Levy that it will "forcibly remove" the customers' magazine rack fixtures.[4] (*Id.* ¶ 34.) Finally, Levy alleges that since September, News Group employees have solicited customers in UniMag's former territory who are presently under contract with Levy. (*Id.* ¶ 35.)

Based on these additional factual allegations, Levy filed a proposed eight-count Second Amended Counterclaim. The proposed Second Amended Counterclaim would add five new counts: (1) tortious interference with contract against Anderson and News Group (Count III); (2) conspiracy to breach contract against UniMag, Anderson, and News Group (Counts V and VI); (3) trade disparagement against Anderson and News Group (Count VII); and (4) violations of the UDTPA against Anderson and News Group (Count VIII). Levy also seeks to amend its claim of tortious interference with prospective business advantage against Anderson and News Group by adding allegations that they interfered with Levy's relationship with its customers.

---

[4]     This allegation is puzzling. If UniMag's former customers continue to use fixtures that belong to UniMag, one would expect that UniMag would be entitled to remove the fixtures. As this allegation relates to UniMag, a party not opposing the present motion, the court need not resolve the issue here.

## DISCUSSION

Third-Party Defendants Anderson and News Group oppose Levy's proposed amendments on three grounds. They argue: (1) that the proposed amendment will strip the court of subject matter jurisdiction; (2) that the proposed amendment is futile because the tortious interference claims will not survive a motion for summary judgment, and the trade disparagement and UDTPA claims will not survive a motion to dismiss; and (3) that the proposed amendment will result in undue delay and prejudice to Anderson and News Group.

### A.  Subject Matter Jurisdiction

As an initial matter, Third- Party Defendants argue that leave to amend should be denied because the amendments would divest the court of subject matter jurisdiction. This case was originally filed in this court pursuant to the diversity statute, which deems a corporation to be a citizen of the state in which it was incorporated, and a citizen of the state of its principal place of business. *See* 28 U.S.C. § 1332(c)(1). Under the rule of complete diversity, a suit brought under section 1332 cannot be maintained if there are citizens of the same state on both sides of the lawsuit. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Diversity of citizenship is determined at the time the initial complaint is filed, *see Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993), and subsequent occurrences will not normally divest the court of subject matter jurisdiction, *see Rosado v. Wyman*, 397 U.S. 397, 405 n. 6 (1970) ("[A] federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile[.]"). Levy was an Illinois corporation at the time the First Amended

Counterclaim was filed and then became a Delaware limited liability corporation prior to filing its proposed Second Amended Counterclaim.[5] At all times relevant, UniMag was an Ohio citizen, and Anderson and News Group were Delaware citizens. Presently, then, parties on both sides of the dispute are citizens of Delaware.

Anderson and News Group contend that because the proposed amendments allege new sets of facts and injuries, and seek different forms of relief under new causes of action, this court must redetermine the basis of its subject matter jurisdiction. Both Anderson and News Group cite several cases outside the Seventh Circuit in which courts have concluded that diversity of citizenship must be redetermined if a proposed amendment changes the action in an "essential fashion." *See, e.g., Shaw v. Gwatney*, 795 F.2d 1351, 1354 (8th Cir. 1986); *Carlton v. Baww, Inc.*, 751 F.2d 781, 785 (5th Cir. 1985); *New Bank of New England v. Tritek Communications, Inc.*, 143 F.R.D. 13, 17 (D. Mass. 1992).[6]

---

[5]    Although neither party notes this, the citizenship of a limited liability company for purposes of diversity jurisdiction is the citizenship of its members. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). This test for citizenship, however, does not alter the court's analysis of its subject jurisdiction. Nevertheless, Levy is instructed to allege the citizenship of its members in its Second Amended Complaint.

[6]    Relying on *Barnes v. Callaghan & Co.*, 559 F.2d 1102, 1106 (7th Cir. 1977) Anderson further argues that Levy's amendment would not "relate back" to the First Amended Counterclaim because the new claims do not arise out of the same "conduct, transaction, or occurrence" on which Levy's pending claim is based. In *Barnes*, the plaintiff's proposed fourth amendment sought to add a slander claim to her sex discrimination suit, more than a year after the statute of limitations on the cause of action had run. The court held that the allegations of slander could not relate to the date of her original pleading, before the statute had run, because the claim "did not arise out of the conduct, transaction or occurrence set forth in the original pleading." *See id.* at 1106. The relation back doctrine
(continued...)

Although the cases cited by Third-Party Defendants do stand for the proposition that subject matter jurisdiction must be redetermined after an amendment renders the action "essentially" different, the facts supporting jurisdictional redetermination in those cases are distinguishable from the facts presented here. For example, in *Shaw*, the court held that it was required to reassess subject matter jurisdiction where the plaintiff sought to amend his complaint to include a claim for monetary damages only after the plaintiff's claim for injunctive relief had been rejected. 795 F.2d at 1354. The *Carlton* court required that diversity jurisdiction be redetermined where the amendment sought joinder of an indispensable party of non-diverse citizenship. 751 F.2d at 785. Finally, in *New Bank*, the court held that the plaintiff's amended complaint should serve as the basis for determining subject matter jurisdiction where it was not an extension of the original complaint because it asserted a different injury, sought different relief, and deleted some of the originally-named defendants. 143 F.R.D. at 18. Indeed, the *New Bank* court recognized that a "partial amendment of the complaint that may affect jurisdictional requirements, generally will not operate to nullify diversity jurisdiction." *See id.* at 16.

Levy contends that even if this Circuit requires that subject matter jurisdiction be redetermined when a proposed amendment changes the action in an "essential fashion," its proposed Second Amended Counterclaim does not make "essential" changes because its new

---

[6](...continued)
involved in *Barnes* is inapplicable here, however, because this case does not involve a lapsed statute of limitations.

legal theories and claims relating to Anderson and News Group's conduct "involve substantially the same issues and theories as the original pleading." *See Liu v. T & H Machine, Inc.*, 191 F.3d 790, 794 (7th Cir. 1999). This court agrees: the proposed amendments stem from conduct surrounding Levy's alleged rights arising out of the Levy-UniMag contract. They merely expand the tortious interference claims and include closely related conspiracy claims based on Third-Party Defendants' alleged knowledge of Levy's alleged first right of refusal. Furthermore, although the trade disparagement and UDTPA claims involve conduct occurring after Levy's initial filing, they stem from Anderson and News Group's agreements with UniMag, the legality of which Levy challenged in its initial filing. Because Levy's proposed amendments do not essentially change the nature of the action, the court need not redetermine its basis of subject matter jurisdiction.

## B.   Standard of Review

Rule 15(a) provides that "leave of court [to amend a pleading] shall be freely given when justice so requires." FED. R. CIV. P. 15(a); *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993). Leave to amend pleadings should be freely granted, particularly in the early stages of a case. *See Holstein*, 987 F.2d at 1270. The court will deny leave to amend, however, where the amended pleading is futile, is made in bad faith, or would result in undue delay or prejudice to the opposing party. *See Looper Maintenance Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 914 (7th Cir. 1999).

### 1.   Futility of Proposed Amendments

In situations where a proposed amendment will not withstand a motion to dismiss,

the court may deny it as futile. *See Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985).[7] To assess the legal sufficiency of a proposed amendment, the court applies the same standards applicable under Federal Rule of Civil Procedure 12(b)(6). *See General Elec. Capital Corp., v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Thus, a proposed amendment is futile if the moving party can prove no set of facts that would entitle it to relief. *See id.*

a.    **Levy's Trade Disparagement Claims**[8]

---

[7]    News Group also suggests that an amendment is futile if it will not withstand a motion for summary judgment. The cases cited by News Group, however, apply the summary judgment standard where there has been an opportunity for discovery. *See Morissette v. Peters*, 45 F.3d 1119, 1123 (7th Cir. 1995) (upholding denial of leave to amend where the plaintiff moved to amend nearly a year after the magistrate's first order disposed of most of his claims and during the pendency of defendants' second motion for summary judgment on the final claim); *Estate of Porter v. Illinois*, 36 F.3d 684, 689 (7th Cir. 1994) (upholding denial of leave to amend where the plaintiff sought leave to amend three months after the filing of the defendant's summary judgment motion). Although both Anderson and News Group have filed motions for summary judgment here, the court concludes that the motions were premature. On December 15, 1999, the court accepted an agreed discovery schedule, to which Anderson and News Group were parties, and entered an order directing the parties to file dispositive motions by June 1, 2001. Ten days later, obviously after only extremely limited discovery, Anderson moved for summary judgment. Shortly thereafter, on January 10, 2000, News Group also moved for summary judgment, and has yet to even file an answer. Because Levy has not had a chance to adequately conduct discovery on the merits of its claims, it will not be held to a summary judgment standard here.

[8]    Both Anderson and News Group question whether Levy's commercial disparagement claims are cognizable under Illinois law. *See, e.g., Becker v. Zellner*, 292 Ill. App. 3d 116, 129, 684 N.E.2d 1378, 1387-88 (2d Dist. 1997), *appeal denied*, 176 Ill. 2d 570, 690 N.E.2d 1379 (1998); *American Pet Motels, Inc. v. Chicago Veterinary Med. Ass'n*, 106 Ill. App. 3d 626, 633 n.2, 435 N.E.2d 1297, 1302 n.2 (1st Dist. 1982), *abrogated on other grounds by Kuwik v. Starmark Star Mktg. & Admin.*, 156 Ill. 2d 16, 219 N.E.2d 129 (1993). Federal courts in this district have concluded, however, that Illinois continues to recognize such a claim. *See Cohabaco Cigar Co. v. United States Tobacco Co.*, No. 98 C 1580, 1998 WL 773696, at *10 (N.D. Ill. Oct. 30, 1998)("the tort of commercial disparagement is still viable in Illinois"); *Richard Wolf Medical Instruments Corp. v. Dory*, 723 F. Supp. 37, 42 (N.D. Ill.1989) ("Illinois
(continued...)

To state a claim for trade disparagement in Illinois, the plaintiff must allege that the defendant "made false and demeaning statements regarding the quality of another's goods and services." *See Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388, 396, 652 N.E.2d 1077, 1083 (1st Dist. 1995). In addition, a plaintiff must allege facts showing that the defendant knew the statement to be false, or that the defendant acted in "reckless disregard of its truth or falsity." *See Soderlund Bros. Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 620, 663 N.E.2d 1, 10 (1st Dist. 1995), *appeal denied*, 168 Ill. 2d 626, 671 N.E.2d 743 (1996). Also, to recover under a commercial disparagement claim, some courts require a plaintiff to plead and prove that the disparaging speech proximately caused "special damages." *See Navistar Int'l Transp. Corp. v. Freightliner Corp.*, No. 97 C 3792, 1999 WL 569577, at *4 (N.D. Ill. July 30, 1999); *Unique Concepts, Inc. v. Manuel*, 669 F. Supp. 185, 190 (N.D. Ill 1987) (the plaintiff must plead special damages when the disparaging speech approximates defamation *per quod* – e.g., disparaging speech that does not presume damages).[9] In a commercial disparagement case, a plaintiff may plead special damages by alleging that as a result of the disparaging speech, a specific third party refused to conduct business with the plaintiff, or that the plaintiff subsequently suffered

---

[8](...continued)
courts still recognize the common law tort of commercial or trade disparagement."). Given the court's resolution of Levy's motion to include these claims, however, it need not decide this issue.

[9]      Just as there is uncertainty that the tort of commercial disparagement is viable in Illinois, it is likewise not entirely clear that special damages must be alleged and proven in a commercial disparagement action. *See, e.g., Cohabaco*, 1998 WL 773696, at *10 ("While Illinois requires the pleading of special damages for certain slander/defamation torts, it is unclear whether it requires a plaintiff claiming commercial disparagement to allege and prove special damages." (citing *Becker*, 292 Ill. App. 3d at 127-29, 684 N.E.2d at 1386-88)).

a general decrease in its business. *See Becker*, 292 Ill. App. 3d at 127, 684 N.E.2d at 1387.

Levy asserts that Anderson and News Group engaged in commercially disparaging speech when they falsely told customers formerly serviced by UniMag and currently serviced by Levy that Levy is responsible for handling UniMag returns.[10] Anderson and News Group counter, arguing that the allegedly disparaging statements are not actionable because they do not attack the quality of Levy's goods and services. Furthermore, they argue that Levy fails to allege that Anderson and News Group knew this statement to be false, or acted in reckless disregard of its truth or falsity. Finally, Anderson and News Group contend that the trade disparagement claim will not survive a motion to dismiss because Levy fails to allege that it has suffered any damages, let alone the requisite special damages.

Levy offers little in response, merely asserting that the statements disparage the quality of its services. Although not included in its proposed counterclaim, Levy now claims in a footnote that the "responsibility for returns" statement disparages the quality of Levy's services because it puts Levy in the untenable situation of either having to disappoint a customer, or take back the returns at a loss.

Courts in Illinois have been reluctant to find trade disparagement in instances where

---

[10]     In its reply brief, Levy does not attribute UniMag's alleged threat to remove magazine rack fixtures from its former customers who now do business with Levy to Anderson and News Group. Accordingly, the court does not address Anderson's and News Group's arguments that these statements allegedly made by UniMag do not constitute commercially disparaging speech. The court agrees with Third-Party Defendants, however, that a trade disparagement claim against Anderson or News Group based on statements made by UniMag would fail because Levy does not allege that Anderson or News Group made the statements or that they even knew such statements had been made.

the plaintiff's goods and services are not directly impugned. *See Allcare, Inc. v. Bork*, 176 Ill. App. 3d 993, 999-1000, 531 N.E.2d 1033, 1037 (1st Dist. 1988); *Crinkley v. Dow Jones & Co.*, 67 Ill. App. 3d 869, 876, 385 N.E.2d 714, 719 (1st Dist. 1978). In *Allcare*, the plaintiff, a supplier of medical equipment, alleged that the defendant committed trade disparagement by uttering statements asserting that the plaintiff's president had been involved in bribing customers, and that the plaintiff was being investigated for Medicare fraud. 176 Ill. App. 3d at 996, 531 N.E.2d at 1035. The court affirmed the dismissal of the commercial disparagement claim, holding that even though the statements may have defamed the plaintiff's president, and may have prevented third parties from doing business with it, the statement nevertheless did not attack the quality of the plaintiff's services. *See Allcare*, 176 Ill. App. 3d at 1000, 531 N.E.2d at 1037. In *Crinkley*, the plaintiff alleged that the defendant committed trade disparagement by publishing an article asserting that two of the plaintiff's former employees paid bribes to foreign governments for contracts. 67 Ill. App.3d at 872, 385 N.E.2d at 716. Affirming the dismissal of the commercial disparagement claim, the court held that while the article "impugned the plaintiff's integrity, it did not disparage the quality of his services." *See Crinkley*, 67 Ill. App.3d at 876-77, 385 N.E.2d at 719-20.

Here, the "responsibility for returns" statement allegedly made by Anderson and News Group similarly did not impugn the quality of Levy's goods or services themselves. Indeed, Levy itself alleges that the statement was made "in order to *damage Levy's reputation* and to induce customers to switch their service to [News Group] and Anderson." (Second. Am. Counterclaim ¶ 33 (emphasis added).) Third-Party Defendants' alleged attack on Levy's

reputation may support a cause of action for defamation, but to sustain an action for commercial disparagement, the statements must attack the quality of the goods or services. *See Allcare*, 176 Ill. App. 3d at 1000, 531 N.E.2d at 1037. The alleged statement said nothing derogatory about Levy's services, and if anything, by falsely suggesting Levy was responsible for UniMag's returns, the statement arguably encouraged customers to continue conducting business with Levy. Without statements by Third-Party Defendants impugning Levy's goods or services, Levy cannot prove any set of facts entitling it to relief under a commercial disparagement theory.

Two additional factors defeat the commercial disparagement claim. First, Levy fails to allege that News Group or Anderson knew that this statement was false, or acted in reckless disregard as to its truth or falsity. In addition, Levy has failed to allege special damages. Contrary to Levy's interpretation of *Unique*, that case does indeed impose a requirement that such an allegation be made where, as here, the allegedly disparaging speech approximates defamation *per quod*. 669 F. Supp. at 190-91.

Levy's motion to amend its counterclaim to add a commercial disparagement claim is denied.

### b. Uniform Deceptive Trade Practices Act Claim

To state a claim for violation of the UDTPA, a plaintiff must allege that "in the course of his business, vocation or occupation, [a defendant] . . . disparages the goods, services, or business of another by false or misleading representation of fact[.]" 815 ILCS 510/2(8). The elements of this section of the UDTPA and the common law tort of trade disparagement are

essentially the same – e.g., both causes of action require disparagement of goods or services, rather than reputation, integrity or credit. *See Crinkley*, 67 Ill. App. 3d at 876, 385 N.E.2d at 719 ("Section 2(8) of the UDTPA . . . substantially embodies the common law tort of commercial disparagement."). Accordingly, for the same reason Levy cannot state a claim for commercial disparagement, it likewise cannot state a claim under Section 2(8) of UDTPA. Levy does not allege that Anderson or News Group demeaned the quality of its goods or services. *See, e.g., Richard Wolf Medical Instruments Corp. v. Dory*, 723 F. Supp. 37, 20 (N.D. Ill. 1989) (rejecting UDTPA disparagement claim because letter accusing party of being vexatious litigant and patent infringer did not impugn quality of his products); *American Pet Motels, Inc. v. Chicago Veterinary Med. Ass'n*, 106 Ill. App. 3d 626, 633, 435 N.E.2d 1297, 1303 (1st Dist. 1982), *abrogated on other grounds by Kuwik v. Starmark Star Mktg. & Admin.*, 156 Ill. 2d 16, 219 N.E.2d 129 (1993) (rejecting UDTPA claim where statements indicating that plaintiff was practicing medicine without license did not accuse the plaintiff of employing substandard, negligent, or harmful business practices).

Levy's proposed UDTPA claim improperly seeks an award of monetary damages. Such damages are unavailable under the UDTPA. 815 ILCS 510/3; *see also Astra Imports Co., Inc. v. Eagle Distributors, Inc.*, No. 95 C 5626, 1996 WL 685446, at *2 (N.D. Ill. Nov. 21, 1996) (collecting cases); *American Pet*, 106 Ill. App. 3d at 633 n.2, 435 N.E.2d at 1302 n.2. A plaintiff alleging a violation of the UDTPA must seek injunctive relief, and must allege a threat of future misrepresentation resulting from the defendant's conduct. *See Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 904 F. Supp. 818, 822 (N.D. Ill. 1995) (dismissing UDTPA

claim because plaintiff failed to allege future harm); *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 99, 613 N.E.2d 1150, 1157 (1st Dist. 1992) (affirming dismissal of UDTPA claim where plaintiff could not allege future harm).

The court recognizes that Levy's proposed complaint seeks "such other and further relief as this Court deems just and proper." The court concludes, nevertheless, that Levy has not adequately alleged future harm. As discussed above, Levy does not allege that its business has decreased or that identifiable customers have ceased doing business with it. Without alleging special damages, Levy cannot allege how it will continue to be harmed by the alleged demeaning remarks. Levy attempts to circumvent its difficulties with the future harm requirement by alleging that the disparaging statements "*are being made* in order to damage Levy's reputation," but the effort is unavailing. (Second Am. Counterclaim ¶ 33 (emphasis added).) Although phrased in the present tense, that allegation does not explain how Levy's reputation either has been or will be injured. *Tarin v. Pellonari*, 253 Ill. App. 3d 542, 553, 625 N.E.2d 739, 747 (1st Dist. 1993) (affirming denial of leave to add UDTPA claim where plaintiff failed to allege future harm.) Therefore, because the alleged statements do not demean the quality of Levy's goods or services, and Levy has failed to allege future harm, the court denies Levy's motion to amend its counterclaim to add a UDTPA claim.

### c. Tortious Interference Claims

Levy seeks to amend its counterclaim by alleging that Anderson and News Group tortiously interfered with its right of first refusal in violation of its contract with UniMag. It also appears that Levy seeks to amend its claim of tortious interference with prospective

business advantage by adding allegations that Anderson and News Group acted "with the intent to interfere with Levy's contractual relationship with its customers." (Second Am. Counterclaim ¶ 36.) In order to state a claim for tortious interference with contract, a plaintiff must allege "(1) the existence of a valid and enforceable contract between plaintiff and another; (2) defendant's awareness of the contractual relations; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages." *See D 56, Inc. v. Berry's Inc.*, 955 F. Supp. 908, 912 (N.D. Ill. 1997). Tortious interference with prospective business advantage differs only in that the plaintiff must show that it had a "reasonable expectation of entering into a valid business relationship with a third party." *Labate v. Data Forms, Inc.*, 288 Ill. App. 3d 738, 742, 682 N.E.2d 91, 94 (1st Dist. 1997).

For both interference claims, a plaintiff must allege that the defendant knew of the relationship between the plaintiff and the third party, and induced a breach of contract or a termination of a business expectancy. *See Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170-71 (7th Cir. 1993); *Real Colors, Inc. v. Patel*, 39 F. Supp. 2d 978, 990 (N.D. Ill. 1999). Merely entering into a contract for which it was solicited by a breaching party will not trigger liability for the accepting party. *See Continental Assurance Co. v. Davis*, 21 F. Supp. 2d 838, 843 (N.D. Ill. 1998) ("passive acceptance of the benefits of a breach of contract" does not raise a claim of tortious interference ). Plaintiff must show, further, that the defendant's conduct was unjustifiable or malicious. *See La Rocco v. Baldwin*, 108 Ill. App. 3d 723, 730, 439 N.E.2d 537, 542 (2d Dist. 1982).

Relying on the arguments set forth in their unanswered motions for summary judgment, Anderson and News Group claim that Levy has offered no evidence that they induced UniMag to disregard its alleged contractual obligation to provide Levy with the "right of first refusal" to a sale of UniMag's assets. Anderson and News Group also argue that they were not aware of Levy's alleged right of first refusal, and had been reassured by UniMag that no right of first refusal existed.[11] Furthermore, with respect to the claim of tortious interference with prospective economic advantage, Anderson and News Group contend that they have a "competitor's privilege" which allows them to solicit Levy's customers, so long as they do not engage in "fraud, deceit, intimidation, or deliberate disparagement." *See American Broadcasting Co. v. Maljack Productions*, 34 F. Supp. 2d 665, 674 (N.D. Ill. 1998).

Because Levy has not had a chance to adequately conduct discovery on the merits of its claims, however, it will not be held to a summary judgment standard here. *See supra* n.4. Instead, the court must determine whether Levy's allegations are sufficient to state claims for tortious interference.

First, Levy alleges that it had an enforceable right of first refusal which survived its purchase agreement with UniMag, and that it had a reasonable expectation of entering into a further business relationship with its existing customers. (Second Am. Counterclaim ¶¶ 55,

---

[11]    Levy asserts News Group has conceded that it acted with knowledge of Levy's alleged first right of refusal but does not direct the court to documentation of News Groups' supposed admission. News Group insists that before it entered into the asset purchase agreement, UniMag warranted that no such right existed. In any event, because the court is merely examining the allegations for sufficiency rather than for merit at this stage, it need not attempt to resolve this factual dispute.

61.) Levy further alleges that Anderson and News Group were aware of Levy's contractual rights with UniMag and its business expectancy with its customers. (*Id.* ¶ 56, 62.) With respect to its tortious interference with contract claim, Levy alleges that in spite of this knowledge, Anderson and News Group negotiated and entered into contracts with UniMag for the disposal of UniMag's assets in violation of Levy's rights during a holiday when Levy could not seek relief from this court. (*Id.* ¶¶ 3, 28-29.) With respect to its tortious interference with prospective economic advantage, Levy alleges that Anderson and News Group have lied to Levy's customers with the intent to induce those customers to switch their service to Anderson and News Group. (*Id.* ¶¶ 32-33, 35-36.) Thus far, these allegations are sufficient in claiming unjustified and intentional inducement of a breach both of contract and of prospective economic advantage on the part of Anderson and News Group. *See, e.g., Dames & Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 826 (N.D. Ill. 1998) (allegations that defendants engaged in deceitful conduct were sufficient to state an intentional and unjustifiable interference); *D 56*, 955 F. Supp. at 917 (intentional interference can be established where a party takes some action with knowledge of a contrary contract right). Finally, Levy alleges a subsequent breach by UniMag and damages resulting from the interference with its contract with UniMag and damages from the interference with its customers. (Second Amended Complaint ¶¶ 40, 59, 65.)[12] The court concludes that Levy's

---

[12]     The court pauses here to note yet another issue on which Illinois authorities appear to conflict. Some case law suggests that a plaintiff must allege its business expectancy was disrupted, *see e.g., Labate*, 288 Ill. App. 3d at 742, 682 N.E.2d at 94 ("To set out a claim
(continued...)

allegations are sufficient to state a claim both for tortious interference with contract and tortious interference with prospective economic advantage.

Finally, Third-Party Defendants raise the "competitor's privilege" defense to Levy's tortious interference claims. That defense excuses a defendant's conduct in diverting business from a competitor when motivated to further its business. *Cf. Soderlund*, 278 Ill. App. 3d at 616, 663 N.E.2d at 8 (competitor's privilege allows one to divert business from one's competitors provided one's intent is to further one's business and is not solely motivated by spite or ill will). At the pleading stage, if the allegations raise the inference that the

---

[12](...continued)
for tortious interference with a prospective business expectancy, a plaintiff must allege . . . purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship with that third party"). Other cases neglect this element, presumably requiring instead that plaintiff generally allege and ultimately show damages resulting from the interference, *see, e.g. Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 887, 681 N.E.2d 564, 569 (1st Dist. 1997), *appeal denied*, 174 Ill. 2d 558, 686 N.E.2d 1160 (1997) (articulating the elements of a tortious interference with prospective economic advantage without listing disruption of business relationship as an element separate from damages). Here, Levy does allege that Anderson and News Group lied to its customers to induce the customers to switch service, and that they solicited its customers. (Second Am. Counterclaim ¶¶ 33, 35.) Indeed, Levy names certain customers that News Group has solicited. (*Id.* ¶ 35.) Levy does not allege, however, that it was prevented from continuing its business relationship with these customers as a result of the alleged activity on the part of Anderson and News Group. Nevertheless, Levy does allege generally that it was damaged as a result of this interference, and the court conceives of no damage other than either disruption or termination of a business relationship. (*Id.* ¶ 59.) Under the liberal pleading standards of FED. R. CIV. P. 8(a), the court concludes that Levy's failure to allege actual disruption or termination of its business relationships with its customers is not fatal to its claim. The court notes further, however, that in order to prevail on this claim Levy will have to prove disruption or termination of its business relationships caused by unlawful conduct. *See Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 484, 693 N.E.2d 358, 370 (1998).

21

defendant's conduct was privileged, a plaintiff may nevertheless proceed if it can allege that the defendant's actions were unjustified. *See Snap-On Inc. v. Ortiz*, No. 96 C 2138, 1996 WL 627618, at *4 (N.D. Ill. Oct. 24, 1996) (citing *Roy v. Coyne*, 259 Ill. App. 3d 269, 283, 630 N.E.2d 1024, 1033 (1st Dist. 1994)). If such allegations are made, the defendant bears the burden of proving that it "was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *See D 56*, 955 F. Supp. at 917. Here, Levy has alleged that Anderson and News Group acted deceitfully – without privilege – in entering the contract with UniMag and in attempting to solicit Levy's customers. Third-Party Defendants may, either at the close of discovery or at trial, demonstrate their alleged conduct was privileged. At this stage, however, Levy is entitled to amend its tortious interference with prospective economic advantage claim and to add its tortious interference with contract claim.

### d. Conspiracy to Breach Claim

Levy also seeks to add claims that both Anderson and News Group independently conspired with UniMag to breach its obligation to provide Levy with the first right of refusal to purchase assets. In Illinois, civil conspiracy is defined as "a combination of two or more persons who join together for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *See Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 920, 710 N.E.2d 861, 873 (1st Dist. 1999), appeal denied, 185 Ill. 2d 619, 720 N.E.2d 1090 (1999). To state a claim for conspiracy to breach a contract, a plaintiff must allege an agreement between the breaching party and some third party, acts in furtherance

of the agreement, and damages to the plaintiff resulting from the conspiracy. *See Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996); *J.F. Equipment, Inc. v. Owatonna Mfg. Co.*, 143 Ill. App. 3d 208, 215, 494 N.E.2d 516, 520 (2d Dist. 1986). The mere allegation that a conspiracy exists does not in and of itself "constitute an actionable wrong upon which liability for damages can be found." *See Langer v. Becker*, 176 Ill. App. 3d 745, 754-55, 531 N.E.2d 830, 836 (1st Dist. 1988)("The conspiracy to commit an act is not actionable at law unless the underlying act itself constitutes wrongful or tortious conduct.").

Anderson and News Group contend that this claim cannot survive a motion to dismiss because Levy has not alleged any set of facts or damages to support this claim that are different or independent from those alleged in its tortious interference claims. Furthermore, they argue that since the underlying actions did not constitute tortious interference, they cannot be held liable for conspiracy to interfere.

The court disagrees. Levy alleges that Third-Party Defendants conspired to induce UniMag to breach its obligation to Levy. (Second Am. Counterclaim ¶¶ 67, 71.) Levy alleges acts in furtherance of that conspiracy by claiming that Third-Party Defendants and UniMag "actively pursu[ed] a transfer of assets and/or delegation of management in violation of Levy's rights, . . . secretly negotiat[ed] a deal to accomplish this goal, and . . . enter[ed] into agreements in violation of Levy's right of first refusal." (*Id.* ¶¶ 68, 72.) Levy also generally alleged damages. (*Id.* ¶¶ 69, 73.) Obviously, the underlying wrongful or tortious act that provides impetus for the conspiracy is the alleged tortious interference with contract. Levy

need not allege facts or damages that are independent of its allegations for tortious interference – a conspiracy claim may be alleged along side a tortious interference claim involving the same alleged tortious conduct, so long as any judgment rendering damages is awarded for only one of the claims. *See Thermodyne*, 940 F. Supp. at 1310 (allowing both tortious interference and conspiracy claims "with the qualification that damages cannot be awarded . . .under both counts."). Accordingly, the court grants Levy's motion for leave to add conspiracy claims to its counterclaim.

### 2. Prejudice and Bad Faith

As previously indicated, leave to amend shall be freely given absent some justification for denial. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). Implicit in almost every proposed amendment is the creation of some prejudice for the non-moving party. *See Alberto-Culver Co. v. Gillette Co.*, 408 F. Supp. 1160, 1162 (N.D. Ill. 1976) (allowing amendment more than a year after original complaint where the amendments did not alter the parties or the theory of the case). Although leave to amend is to be liberally granted, the court must be wary of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman*, 371 U.S. at 182. In determining whether leave should be granted, the court must weigh any prejudice to the non moving party against the "moving party's right to have the case decided on the merits." *See id.*

The Ninth Circuit has held that filing a motion to amend in lieu of responding to a

summary judgment motion can raise doubts as to its sincerity. *See Schlacter-Jones v. General Telephone of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991). In *Schlacter-Jones*, the plaintiff filed a motion for leave to amend more than a year after filing her initial complaint and at the close of discovery after a pending summary judgment motion had been fully briefed. The Ninth Circuit affirmed the district court's decision to deny leave to amend, holding that the tardiness of the amendment, the pending summary judgment motion, and the futility of most of the claims were fatal for the plaintiff. *See id.*

Here, Anderson and News Group contend that they relied on Levy's statement on December 9, 1999 that it would not amend its counterclaim. Third-Party Defendants argue further that their motions for summary judgment will dispose of the tortious interference claims, and that they will be prejudiced if the litigation were allowed to expand into "areas completely unrelated to Levy's agreement with UniMag or its claimed right of first refusal." (Anderson's Memo in Opp'n to Levy's Mot. for Leave to File Second Am. Compl., at 14.) Levy counters by claiming that the amendment will not result in undue delay or prejudice because discovery on the merits has not yet begun.

Although the question is a close one, the court concludes that Levy's proposed amendment does not create prejudice that outweighs its right to have the case decided on the merits. Discovery is still in its beginning stages and no new parties are being brought into the lawsuit. Even though Levy has proposed the amendments after Anderson and News Group's have moved for summary judgment, the amendments were submitted less than five months after initial filing of the counterclaim, and are due in part to alleged conduct Levy

learned of after its initial filing. Accordingly, the tortious interference claims and the conspiracy claims will not cause undue prejudice to Third-Party Defendants. As discussed above, the trade disparagement and UDTPA claims are facially deficient, and only tangentially relate to the right of first refusal. These claims are dismissed.

## CONCLUSION

For the foregoing reasons, Levy's motion for leave to amend (Doc. 55-1) is granted in part and denied in part. Third-Party Defendants' motions for summary judgment (Docs. 42-1, 49-1) are provisionally denied with the understanding that they may be renewed and supplemented. Levy's unopposed motion to change its name (Doc. 54-1) is also granted.

ENTER:

Dated: August 28, 2000

REBECCA R. PALLMEYER
United States District Judge